

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

January 17, 2017

<u>Via ECF</u>
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
New York, New Yok 10007

      Re:    <u>United States</u> v. <u>Gabriel Aguirre Cuero</u>,
                 15 Cr. 125 (PKC)

Dear Judge Castel:

      The Government respectfully submits this letter regarding the upcoming sentencing of defendant Gabriel Aguirre Cuero. For the reasons set forth below, the Government respectfully submits that a sentence within the applicable Guidelines range is appropriate.[1]

      The relevant facts are undisputed and set forth accurately in the Presentence Investigation Report. The defendant attempted to distribute 350 kilograms of cocaine on board an illegal and flagless go-fast vessel that was interdicted in international waters off the coast of Colombia. (Jan. 4, 2017 Presentence Investigation Report ("PSR") ¶ 21). Most, if not all, of the cocaine on the boat was destined for the United States. (*Id.* ¶ 27). The defendant admits that he accepted a $5,000 payment prior to departing with the drugs, and that he expected to receive another $5,000 payment if he completed the shipment. (Def. Mem. at 1, 3). Although defense counsel suggests that the defendant's membership in the drug-trafficking organization at issue was brief, the three defendants in this case were important enough to the main target of the investigation

---

[1] In the plea agreement, the parties stipulated to a Guidelines range of 151 to 188 months' imprisonment based on an offense level of 33 and Criminal History Category II. (PSR ¶¶ 7, 9). The Probation Office calculated the same offense level, but applied Criminal History Category III based on the determination that the defendant was serving a term of supervised release at the time of the offense. (*Id.* ¶¶ 46, 48 (citing U.S.S.G. § 4A1.1(d))). As a result, the Probation Office contains an applicable Guidelines range of 168 to 210 months' imprisonment. (*Id.* ¶ 70).

that he hired an attorney in Colombia as part of an unsuccessful effort to corruptly secure their release. (*See* PSR ¶ 26).

The defendant does not face "the same term of imprisonment" as a "wealthy kingpin." (Def. Mem. at 2). He has already received leniency by virtue of the parties' plea agreement, which allowed him to plead guilty to a lesser-included offense that carries a reduced mandatory minimum sentence of 60 months. Further, neither the Government nor the Probation Office seeks to apply an aggravating-role adjustment, *see* U.S.S.G. § 3B1.1, or the enhancements for importation and criminal livelihood that are available for managers or leaders of a drug-trafficking organization, *see id.* § 2D1.1(b)(15)(C), (E).[2] On the other hand, as the defendant conceded in the plea agreement, his conduct was significant enough that no mitigating-role reduction is appropriate. He was a core participant in an offense involving the transportation of hundreds of kilograms of cocaine and should be sentenced as such.

The defendant's policy critique of U.S.S.G. § 2D1.1 largely ignores the impact of his criminal history on the applicable Guidelines range. As a result of the defendant's previous conviction, he is in Criminal History Category III rather than I, and he is ineligible for the two-level reduction based on the safety-valve criteria, *see* U.S.S.G. § 2D1.1(b)(17).[3] The circumstances of the defendants' prior conviction also suggest that a significant term of incarceration is warranted. In September 2007, the defendant was arrested in the Pacific Ocean in connection with the seizure of **2.8 tons of cocaine**. (PSR ¶ 46). He subsequently admitted to having participated in "15 to 20" maritime drug-trafficking operations before 2007, and he received leniency in connection with a conviction for violating Title 46 by serving a 70-month term of imprisonment notwithstanding an applicable Guidelines range of 135 to 170 months. (*Id.*; *see also* Criminal Minutes, *United States* v. *Aguirre-Cuero*, No. 07 Cr. 369 (M.D. Fla. Jan. 25, 2008) (dkt. no. 45)). Nevertheless, after being released from prison in approximately 2012, the defendant returned to Buenaventura, knowingly facing the conditions described in his sentencing submission rather than relocating within Colombia or elsewhere in South or Central America, and eventually returned to drug trafficking.

In light of the defendant's prolific history as a maritime drug trafficker, and his assertion that he earned almost no legitimate income after he was released from prison in 2012, it is difficult to believe that the Colombian Navy just happened to catch him in this case on the first occasion that he returned to crime. Even if that is true, the defendant engaged in the crime knowing full well the conditions and the penalties he would face if arrested and brought to the United States for prosecution. In light of this history, the suggestion by defense counsel that the defendant

---

[2] The application of those enhancements to a "kingpin" would result in a further increase of six levels and, based on Criminal History Category III and a total offense level 39, an applicable Guidelines range of 324 to 405 months' imprisonment.

[3] At Criminal History Category I and offense level 31, based on a further two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(17), the applicable Guidelines range would be 108 to 135 months.

committed this crime under some form of economic duress is, at best, strained. (*See* Def. Mem. at 4 (arguing that "there was no choice but to comply" and that the defendant was "powerless to refuse")). And despite failing to fully accept responsibility for his actions, the defendant requests that he receive an even more lenient sentence than his first, so that he can again return to the same conditions that he claims inevitably lead to drug trafficking. Based on this defendant's history, including this offense, Section 3553 cannot support such an outcome.

Finally, while the Court undoubtedly has discretion to issue a variance due to conditions of confinement—notwithstanding the fact that the defendant knew what those conditions were like before subjecting himself to them for a second time—credit for time served is a matter committed to the discretion of the Bureau of Prisons. *See* 18 U.S.C. § 3585(b)(1) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed . . . that has not been credited against another sentence."); *see also United States* v. *Wilson*, 503 U.S. 329, 334 (1992) ("[Section] 3585(b) does not authorize a district court to compute the credit at sentencing."). Accordingly, the Government respectfully submits that the Court should not include such a credit at sentencing, and that a Guidelines sentence is appropriate in light of the circumstances of the offense and the defendant's history.

                Respectfully submitted,

                PREET BHARARA
                United States Attorney

By: _____
     Emil J. Bove III
     Assistant United States Attorney
     (212) 637-2444