




**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 29, 2022

**BY ECF**
The Honorable Kevin P. Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re:      *United States v. Gabriel Aguirre Cuero*, 15 Cr. 125 (PKC)

Dear Judge Castel:

      The Government respectfully submits this letter in opposition to defendant Gabriel Aguirre Cuero's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. 98 ("Pet. Br." or the "Motion").)[1] The Court should deny the request by Cuero for two reasons: (i) Cuero has not demonstrated extraordinary and compelling circumstances justifying his release, and (ii) early release is not warranted under the Section 3553(a) factors.

      Cuero is a recidivist large-scale drug trafficker who participated in more than 15 international drug-smuggling operations. He was arrested in this case while transporting millions of dollars' worth of cocaine on the high seas. In January 2017, this Court took account of the gravity of the defendant's crime and criminal history, as well as the need for specific and general deterrence, and imposed a below-Guidelines sentence of 144 months. Two months later, a judge in the Middle District of Florida who oversaw the defendant's first prosecution in the United States, which involved a 2,800-kilogram shipment on a vessel that the defendant admitted he captained, imposed a 30-month sentence for a violation of supervised release. In August 2020, having served less than half of the sentence imposed by this Court, the defendant filed a motion for compassionate release through his then-counsel based principally on the risks posed to Cuero, who suffers from hypertension, by the unprecedented global pandemic. This Court denied that motion in September 2020. Now, two year later, the defendant filed the instant *pro se* motion for compassionate release. Despite its length, the defendant offers no new arguments, relying only on considerations related to COVID-19.

      For the reasons set forth below, the defendant's hypertension is not an "extraordinary and compelling" reason for compassionate release under Section 3582, and the balance of the Section 3553(a) factors counsels further against the time-served sentence the defendant seeks. Accordingly, the Court should deny the motion.

---

      [1] Unless otherwise noted, "Dkt." refers to an entry on the District Court's docket for this case.

## I. Background

### A. The Defendant's Prior Drug-Trafficking Conviction

In September 2007, law enforcement arrested the defendant and others in connection with the interdiction of a flagless vessel in the eastern Pacific Ocean, which was carrying approximately 2,800 kilograms of cocaine stored in 100 bales. (Ex. A, Jan. 4, 2017 Presentence Investigation Report ("PSR") ¶ 46.)[2] The defendant admitted to authorities that he was the captain of the vessel, and that he had previously participated in between 15 and 20 refueling operations related to cocaine smuggling. (*Id.*)

The defendant was prosecuted in the Middle District of Florida, where he ultimately pleaded guilty to participating in a conspiracy to distribute cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506. (*Id.* ¶ 46; *see also United States v. Aguirre Cuero, et al.*, No. 07 Cr. 369 (M.D. Fla.).) In January 2008, when the defendant was approximately 44 years old, the court sentenced him to 70 months' imprisonment and five years' supervised release. (Ex. A ¶ 46.) The defendant was released from prison in October 2012, and his term of supervised release was scheduled to expire in October 2017. (*Id.*)

### B. Offense Conduct

The defendant's arrest in this case arose from a long-term investigation by the DEA and foreign law enforcement, which began in approximately 2013 when a co-conspirator showed a confidential source: (1) a cocaine laboratory in Colombia's Nariño Department that was being operated by approximately 50 individuals, and (2) a large semi-submersible vessel that the group was using to transport the cocaine. (Ex. A ¶¶ 15-16.) As demonstrated by a series of Title III wiretaps, in January 2015, the co-conspirator began to prepare a vessel for cocaine smuggling by reinforcing and repainting the hull. (*Id.* ¶¶ 17-18.) On February 18, 2015, the DEA intercepted messages exchanged by co-conspirators relating to the location of the cocaine shipment as the vessel departed Colombia traveling northeast toward Mapelo Island. (*Id.* ¶¶ 19-20.)

On February 19, 2015, the Colombian Navy located and interdicted the vessel in the eastern Pacific Ocean. (*Id.* ¶ 21.) The authorities seized 350 kilograms from the vessel, detained the defendant and his two co-defendants, and determined that the vessel was flagless (and thus subject to the jurisdiction of the United States). (*Id.*)

On February 20, 2015, while the defendant and the other crew members were in Colombian custody, the DEA intercepted communications between co-conspirators relating to media coverage of the seizure. (*Id.* ¶ 25.) The following day, the co-conspirators exchanged electronic messages regarding the need to "take care of that quickly" and to hire an attorney to represent the detained crew. (*Id.* ¶ 26.)

---

[2] Exhibit A is omitted from the public filing. The Government has submitted this exhibit to the Court under separate cover.

### C. Procedural History

The defendant arrived in the United States on or about April 28, 2016. (Ex. A at 2.) On March 3, 2015, the defendant was charged in a two-count Indictment. (*See* Dkt. 1 Indictment 15 Cr. 125 (PKC).) The Indictment charged Cuero and his co-defendants with (1) conspiracy to manufacture and distribute, and possess with intent to manufacture and distribute, cocaine, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70506(b), 70504(b)(1); 18 U.S.C. § 3238; and (2) manufacturing and distributing, and possessing with intent to manufacture and distribute, cocaine, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), 70506(a); 18 U.S.C. §§ 3238 and 2. (*Id.*)

On October 13, 2016, the defendant pleaded guilty, pursuant to a plea agreement, to a lesser-included offense of manufacturing and distributing, and possessing with intent to manufacture and distribute, while aboard a vessel subject to the jurisdiction of the United States, 500 grams and more of cocaine. (*See* Ex. B, Dkt. 22 (plea transcript).) The parties' agreement permitted the defendant to plead guilty to a lesser-included offense, which carried a mandatory minimum sentence of 60 months' imprisonment instead of 120 months' imprisonment. (Ex. A ¶¶ 5, 69.)

The Court sentenced the defendant on January 20, 2017. (*See* Ex. C, Dkt. 36 (sentencing transcript).) The Court adopted the Guidelines calculation in the PSR, without objection, which resulted in an offense level of 33, Criminal History Category III, and a recommendation range of 168 to 210 months' imprisonment. (*Id.* at 4; Ex. A at 15.) Under the Section 3553(a) factors, the Court considered the defendant's age and medical conditions, as well as the economic circumstances he faced in Colombia. (Ex. C at 22.) The Court also took into account "the period of time that the defendant spent [in foreign custody] prior to arriving in . . . U.S. custody," and "the conditions under which he was held prior to arriving in U.S. custody." (*Id.* at 26.) On the other hand, the Court found aggravating aspects of the defendant's personal characteristics and a need for specific deterrence, reasoning that the defendant possessed "attributes that would make him an attractive person to be engaged either as an independent contractor or otherwise by a drug-trafficking organization," and finding that there was a "serious danger" that the defendant "would again assist the drug-trafficking organization in one capacity or another." (*Id.* at 23.) Finally, the Court also considered the lenient 70-month sentence imposed in 2008, and expressed concern that:

> [T]he message [of the imposition of a 60-month sentence] would be: The first time you get 70 months. The second time you get 60 months. Maybe if I am caught again, I will get 50 months. It may not be that Mr. Cuero would believe that but others hearing this tale would.

(*Id.* at 23-24.) The Court therefore concluded that "[t]here is an important value in general deterrence in a case such as this," in addition to the "need for specific deterrence of this individual." (*Id.* at 24.)

Based on the balancing of these considerations, the Court imposed a below-Guidelines sentence of 144 months' imprisonment, to be followed by lifetime supervised release. (*Id.* at 26.)

### D.    The Defendant's Violation of Supervised Release in the Middle District of Florida

Following the defendant's conviction and sentence in this District, he was arrested based on a March 14, 2017 warrant from the Middle District of Florida related to a violation of the conditions on the term of supervised release imposed in 2008 in connection with his prior conviction. (*See* Dkt. No. 133, *United States v. Aguirre Cuero, et al.*, No. 07 Cr. 369 (M.D. Fla.).) On January 5, 2018, the defendant admitted to the VOSR specification, and the court imposed a 30-month sentence to be served "consecutively with the term of imprisonment already imposed in the Southern District of New York, which is Case Number 1:15-CR-125." (Ex. D at 19-20; *see also* Dkt. No. 144 at 2, *Aguirre Cuero*, No. 07 Cr. 369 (judgment).)

### E.    The Defendant's Prior Motion

On August 14, 2020, the defendant filed a motion for compassionate release through his then-counsel, Amy Gallicchio of the Federal Defenders of New York. (Dkt. 89 (the "Prior Motion").) The defendant argued that he was at high risk of contracting COVID-19, given conditions at Great Plains Correctional Institution,[3] and that he was at elevated risk from COVID-19 due to his hypertension. (*Id.* at 7-8.) The Government opposed the defendant's motion on August 28, 2020. (Dkt. 91-92.) On September 15, 2020, the Court heard oral argument on the Prior Motion and denied the Prior Motion on the record. (Ex. F, Dkt. 96.)

As to the impact of the COVID-19 pandemic on Cuero's medical issues, the Court observed as follows:

> The Court accepts the proposition that he has hypertension and that he is also 57 years of age. His weight seems to be good. The medical records I saw in terms of his oxygen saturation appear to be good. And he is taking medication for his hypertension.
>
> The Court recognizes that a person who is incarcerated has less of an ability to engage in social distancing, utilize PPE and sanitizers at will, and therefore doesn't have the freedom that one might have if you were at liberty to, say, totally isolate and decide that you didn't want to go out of your house or meet with anyone. The deprivation of liberty necessitated by incarceration deprives a person of that.
>
> Also, the Court recognizes that a person who is incarcerated who contracts COVID-19 has fewer options. They can't go to the doctor of their choice, the hospital of their choice; their medical care is at the direction of the Bureau of Prison[] authorities. So the Court accepts that as a premise, accepts that hypertension increases the risk that contracting COVID-19 could present a more serious situation, and certainly adults who have been hospitalized with COVID-19 have reported

---

[3] After he filed the Prior Motion, the defendant remained incarcerated at Great Plains Correctional Institution until approximately May 10, 2021. (Ex. E at 1.) On approximately May 11, 2021, the defendant was transferred to FCI Edgefield where he remains today. (*Id.*)

> hypertension as one of the co-morbidities. Here, it does appear to me that Mr. Cuero's hypertension is being well attended to in the custody of the Bureau of Prisons, and that is what I would expect to happen, and that is a good thing that it is happening, and that the Bureau of Prisons, which has had problems, significant problems at Great Plains, appears to, at the moment, at least, have it under control. And that is a good thing. We're talking about something on the order of three active cases as of the moment. That's not to say that that couldn't change tomorrow, and it certainly doesn't suggest that it wasn't higher at an earlier point in time.

(*Id.* at 11-12.)

In considering the 3553(a) factors, the Court found as follows:

> [T]he defendant, who had been previously convicted of a drug trafficking crime and who had engaged in, and admitted, when he was a cooperator for the government in the first case brought against him, that he had engaged in numerous, 15 or so, drug smuggling operations, and in fact in the case in which he was a cooperator, it involved a 2.8-ton cocaine shipment. The defendant was facing a guideline range before me of 168 to 210 months' imprisonment, and the Court gave the defendant a substantial variance. It did so taking into account the conditions in which he was held here and in Colombia, the length of time he was held in Colombia, and his medical conditions, among other things, and fashioned a sentence of principally 144 months' imprisonment.
>
> The defendant received a sentence consecutive to that on his violation of the terms of supervised release in the Middle District of Florida, and in that case, Judge Lazzara, in 2018, early 2018, gave the defendant a consecutive sentence of 30 months' imprisonment. At [the] present time, the defendant has served about 39 percent of the combined sentence and is scheduled for a release date on June 27, 2027.
> . . . .
>
> But taking into account the seriousness of Mr. Cuero's offense, the extreme, or I would say rather extreme downward variance that he received at the time of sentencing -- for good reason, downward variance that was appropriate -- and the amount of time that he has served just simply on the sentence before me, including the need for general deterrence and specific deterrence of this individual, who is not a one-off, one-time sort of individual -- prior to 2007, he had engaged in multiple importations, and of course had spent time in federal custody, was charged with a federal crime, and that did not deter him from reoffending. Based on all the foregoing, the Court concludes that there is not an extraordinary and compelling reason to reduce the sentence of Gabriel Cuero, and accordingly, the application is denied.

(*Id.* at 10-13.)

### F. The Defendant's Current Custody Status

The defendant is currently housed at FCI Edgefield, a medium-security prison in South Carolina. According to the website for the Federal Bureau of Prisons ("BOP"), as of August 29, 2022, there are no active cases of COVID-19 among FCI Edgefield's staff and 1,900 inmates.[4] Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited August 29, 2022). In total, 257 inmates at FCI Edgefield have recovered from COVID-19, and three have passed away from the virus. *Id.* Cuero is fully vaccinated and boosted. (Ex. G at 61, Ex. H at 52.)[5]

### G. The Defendant's Instant Motion

On June 3, 2022, Cuero filed the instant *pro se* motion for compassionate release (the "Motion"). Construed liberally, Cuero argues that compassionate release is warranted "for the 'extraordinary and compelling reasons' that he suffers from serious medical conditions that make him more likely to suffer the most deleterious effects of COVID-19, including death, if he contracts the illness." (Pet. Br. at 10.) Cuero requests that this Court "reduce his sentence to time served, to be followed by five years of supervised release." (*Id.*)

## II. Applicable Law

Under 18 U.S.C. § 3582, as amended by the First Step Act, a court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

---

[4] FCI Edgefield houses 1,593 inmates at the federal correctional institution, and 307 inmates at an adjacent minimum security satellite camp. Federal Bureau of Prisons, *FCI Edgefield*, https://www.bop.gov/locations/institutions/edg/ (last visited August 29, 2022).

[5] Exhibits G, H, and K are omitted from the public filing, as they contain Cuero's BOP medical records for 2021, 2022, and 2020 respectively. The Government has submitted these exhibits to the Court under separate cover.

The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13. The Second Circuit, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. *See United States v. Brooker*, 976 F.3d 228, 234–36 (2d Cir. 2020). Nevertheless, courts may "look[] to § 1B1.13 for guidance in the exercise of [their] discretion, but [are] free to consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *United States v. Rodriguez*, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting *Brooker*, 976 F.3d at 237).

Thus, in instances such as this, involving a motion brought by the defendant rather than by the BOP, there are three prerequisites for granting a compassionate release motion. First, the defendant must have exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. *Id.* § 3582(c)(1)(A)(i). And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* § 3582(c)(1)(A). As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. Jan. 8, 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing *Butler*); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

## III.   Discussion

The Motion should be denied. Cuero has not shown that there are extraordinary and compelling reasons for his release or demonstrated that the Section 3553(a) factors warrant a reduction in his sentence.[6]

### A.   Cuero Has Not Established an Extraordinary and Compelling Reason for Compassionate Release

The core of the defendant's arguments concerning the COVID-19 pandemic have been raised before, in the context of the defendant's Prior Motion, and this Court has already found that they failed to establish an extraordinary and compelling reason for a reduction in sentence. Intervening developments have only served to reinforce the Court's prior finding, as the defendant's BOP medical records reflect that the defendant has now received two Pfizer-BioNTech COVID-19 vaccines, and the Pfizer-BioNTech booster shot, further mitigating any risk posed to him by the virus. (Ex. G at 61, Ex. H at 52.) Vaccines have proven to be effective at preventing severe disease and death from COVID-19 and its variants including the Omicron and Delta variants. Although the Omicron variant "spreads more easily than earlier variants, including

---

[6] Cuero has met the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). On March 30, 2022, he filed a request for compassionate release to the Warden of FCI Edgefield. (Ex. I.) Cuero's motion was denied on July 8, 2022. (Ex. J.)

the Delta variant," current vaccines still "reduce[] your risk of severe illness, hospitalization, and death from COVID-19." CDC, *Omicron Variant: What You Need to Know*, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited August 29, 2022). Omicron, which is now the dominant strain in the United States, also likely causes milder disease than other variants. *Id.* Given Cuero's vaccination status, as well as the less severe nature of the dominant Omicron variant, the spread of these variants is not an extraordinary and compelling circumstance warranting his release. Numerous courts in this District have found that inmates who are fully vaccinated have not demonstrated extraordinary and compelling reasons for their release. *See, e.g.*, *United States v. Jaber*, No. 13 Cr. 485 (CM), 2022 WL 35434, at *2–3 (S.D.N.Y. Jan. 4, 2022); *United States v. Jones*, No. 17 Cr. 214 (CM), 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021); *United States v. Barnett*, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021); *United States v. Arbabsiar*, No. 11 Cr. 897 (JFK), 2021 WL 2433757, at *3 (S.D.N.Y. June 15, 2021); *United States v. Santana*, No. 18 Cr. 865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021). The Government respectfully submits that under these circumstances, Cuero's risk of contracting COVID-19 in prison does not present an extraordinary and compelling reason for release.[7]

As the Government argued in responding to the Prior Motion, the defendant's age (now 59) and hypertension are not "extraordinary and compelling" reasons for release under Section 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Morel*, No. 10 Cr. 798 (PAC), 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) (motion for compassionate release denied where fully vaccinated defendant had hypertension, Lyme disease, high cholesterol, and obesity); *United States v.*

---

[7] The defendant claims that he "has already survived COVID-19 once." (Pet. Br. at 38; *see also* Ex. I (claiming that he "suffered severely when [he] contracted" COVID-19).) However, his medical records indicate "no history of covid," (Ex. G at 6 (5/12/2022); *id.* at 15 (4/7/2022)), and report negative COVID-19 test results. (*Id.* at 75 (Negative Test Results on 5/25/2021); Ex. H at 55 (Negative Test Results on 11/29/2021); *see also* Ex. K (2020 Medical Records which lack any mention of COVID-19).) Further, his Prior Motion makes no mention of a history of COVID-19. (*See* Dkt. 89.) However, even assuming that the defendant has previously contracted COVID-19, courts in this District have repeatedly held that compassionate release is not justified in such circumstances. *See, e.g.*, *United States v. Hardy*, No. 11 Cr. 629-5 (CS), 2020 WL 7711676, at *2 (S.D.N.Y. Dec. 29, 2020) ("This Court and others have declined to find 'extraordinary and compelling circumstances' in cases where a defendant has a prior COVID-19 diagnosis." (quoting *United States v. Williams*, No. 11 Cr. 172, 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020)); *United States v. Delorbe-Luna*, No. 18 Cr. 384 (VEC), 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release."); *United States v. Mateus*, No. 14 Cr. 504-1 (KPF), 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) ("Put simply, [the defendant] has already contracted the COVID-19 virus and recovered from it. Other courts have denied compassionate release requests on this basis, and the Court is persuaded by their analyses.") (citing cases); *United States v. Rodriguez*, No. 19 Cr. 64-19, 2020 WL 4581741, at *2 (D. Conn. Aug. 10, 2020) ("A number of district courts in the Second Circuit have found an inmate's positive test undermines his case for compassionate release on the basis of his susceptibility to COVID-19 because the main point of releasing an individual is to decrease the person's chance of contracting COVID-19.").

*Burman*, No. 16 Cr. 190 (PGG), 2021 WL 681401, at *7 (S.D.N.Y. Feb. 21, 2021) (denying motion for compassionate release after finding that the defendant's medical conditions [type II diabetes, hypertension, coronary heart disease, history of "life long smok[ing]" etc.] and rehabilitation efforts were insufficient to justify his release); *United States v. Cerda*, No. 08 Cr. 857 (GBD), 2020 WL 4751824, at *2 (S.D.N.Y. Aug. 17, 2020) ("the inability so socially distance and Defendant's medical conditions [hypertension and arrhythmia], without more, do not justify compassionate release, especially considering the BOP's ongoing efforts to limit the risk to inmates"); *United States v. Decker*, No. 17 Cr. 738 (LAK), 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020) (denying motion for compassionate release where defendant suffered from hypertension). In *United States v. Serrano*, Judge Kaplan rejected a compassionate release motion based on hypertension for a defendant whose age was similar to the defendant's here:

> [T]he Court is not persuaded that the combination of defendant's hypertension and age of 55 years amounts to an extraordinary and compelling circumstance warranting his release. While there is evidence linking hypertension to an increased risk of health complications associated with COVID-19, hypertension is a common and treatable condition, and defendant has not argued or presented evidence that his condition is particularly serious or, for that matter, not fully controlled by medication. And while defendant's age apparently increases his risk to at least some degree, he is not so advanced in age as to fall into an excessively high risk group.

No. 18 Cr. 393 (LAK), 2020 WL 4340639, at *1 (S.D.N.Y. July 28, 2020).

Although CDC Guidelines indicate that hypertension "can" lead to an increased risk for severe illness from COVID-19,[8] the defendant has not demonstrated that his experience with the condition poses a specific risk in this case. Cuero's medical records from FCI Edgefield—like Great Plains Correctional Institution where he was held at the time he submitted the Prior Motion—indicate that the BOP is treating his hypertension, including by prescribing medication and monitoring his blood pressure. (Ex. H at 1-4, 6, 33. 53-54 (prescribing Lisinopril); *id.* at 1, 4 (prescribing Hydrochlorothiazide); *id.* at 1-7, 10, 14, 18, 29, 38 (monitoring blood pressure).) Thus, "there is nothing in the record suggesting that [the defendant] has been unable to care for himself or that he has been neglected by . . . medical personnel." *United States v. Santibanez*, No. 13 Cr. 912 (RJS), 2020 WL 3642166, at *2 (S.D.N.Y. July 6, 2020) (internal quotation marks omitted); *see also United States v. Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (denying compassionate release where defendant's "conditions are stable and the Defendant has managed them in prison, he is located at a federal medical facility that is equipped to provide care both for his existing conditions and should he contract COVID-19").

In denying the Prior Motion, this Court held that "it does appear to me that Mr. Cuero's hypertension is being well attended to in the custody of the Bureau of Prisons. . . ." (Ex. F at 12.) The same is true today. The BOP's efforts as described in Exhibits G and H, *supra*, further support

---

[8] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA (last visited August 29, 2022).

a finding that the defendant has not established extraordinary or compelling reasons that warrant release. Finally, consistent with the efforts of the BOP, as of August 29, 2022, FCI Edgefield reported zero inmates with COVID-19, three inmate deaths from COVID-19, and 257 inmates recovered from COVID-19. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited August 29, 2022). Therefore, the trend at the facility confirms that the BOP has taken reasonable steps to address the outbreak of the virus, and that current conditions are not as dire as the defendant contends in his motion.

Consequently, this Court should find that Cuero's medical conditions do not constitute extraordinary and compelling reasons for his release.[9]

### B. The Section 3553(a) Factors Weigh Against a Sentence Reduction

Even if the defendant had established an extraordinary and compelling reason for release, which he has not, a reduction in sentence is available only for defendants who meet that preliminary threshold *and* for whom a reduction in sentence is appropriate based on the sentencing factors set forth in Section 3553(a). Those factors include, *inter alia*: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; and (c) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). Here, a reduction in sentence would not be appropriate.

Applying the § 3553(a) factors in this context requires assessing whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *Ebbers*, 432 F. Supp. at 430-31; *see also United States v. Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *5 (S.D.N.Y. Feb. 24, 2020) (finding release unwarranted because § 3553(a) factors "weigh[ed] heavily against [a] reduction of [defendant's] sentence."). "Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the . . . original judgment or introduce unprincipled variance into the execution of duly-imposed sentences." *Ebbers*, 432 F. Supp. 3d at 430.

As the Court found in denying the defendant's Prior Motion, the Section 3553(a) factors weigh against early release. Cuero is a recidivist large-scale drug trafficker who has participated in more than 15 drug-smuggling operations. (Ex. A ¶ 46.) As a 44-year-old adult, he acted as the "captain" of a vessel transporting 2,800 kilograms of cocaine. (*Id.*) As another court in this District observed, "The harm that is done by a ton of cocaine is almost incalculable. The lives

---

[9] The defendant also contends that "[f]or 14 years- or 28% of his life- [he] smoked a half a pack of cigarettes a day, until his arrest in 2004," placing him "at increased risk of . . . severe illness from COVID-19." (Pet. Br. at 34.) As for his history of smoking, Cuero's medical records are devoid of any notations as to when, to what extent, or even whether he ever smoked. (*See* Exs. G, H, and K.) But in any event, courts in this Circuit have concluded that the mere assertion that a defendant is a former smoker is insufficient to merit release. *See, e.g.*, *United States v. Elliott*, No. 17 Cr. 128 (ARR), 2020 WL 4381810, at *4 (E.D.N.Y. July 31, 2020) (collecting cases).

affected, the families affected, the communities affected by drugs of that type and that volume is staggering." *United States v. Ger Palagio Suarez*, 16 Cr. 453 (RJS) (Dkt. No. 160 at 27). Although the defendant returned to Colombia after completing his first federal sentence with the age and experience to choose a law-abiding life, he instead resumed his drug-trafficking career. The defendant's most recent venture in 2015 resulted in the seizure of approximately 350 kilograms of cocaine, which, while not his largest shipment, is still a massive amount of narcotics. "[T]he drugs at issue here cripple individuals and destroy families and whole communities." *Santibanez*, 2020 WL 3642166, at *3 (internal quotation marks omitted). Thus, as this Court noted at the defendant's sentencing, the defendant "participated in an important way in the distribution of a substance, which creates misery in the lives of the people who use it," and "was indifferent to the poison that was being distributed and ruining people's lives." (Ex. C at 22, 24.) The serious nature and circumstances of the offense weigh against granting compassionate release.

The defendant argues that he was "[n]ever disciplined or even investigated by prison authorities for taking part in any outside criminal activity or has otherwise displayed any violent or antisocial tendencies." (Pet. Br. at 44.) The defendant's lack of a disciplinary record while in the BOP is commendable, but when contrasted against his criminal history and offense conduct, the defendant's arguments regarding remorse, rehabilitation, and acceptance of responsibility fall short. Moreover, under controlling Second Circuit case law "'[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason [justifying compassionate release].'" *Brooker*, 976 F.3d at 238, (quoting 28 U.S.C. § 994(t)) (emphasis in *Brooker*); *see also United States v. Burman*, No. 16 CR. 190 (PGG), 2021 WL 681401, at *6 (S.D.N.Y. Feb. 21, 2021) (citing *Brooker* and denying motion for compassionate release after finding that the defendant's medical conditions (type II diabetes, hypertension, coronary heart disease etc.) and rehabilitation efforts were insufficient to justify his release); *see also United States v. Prelaj*, No. 16 Cr. 55 (RJS), 2020 WL 3642029, at *3 n.1 (S.D.N.Y. July 6, 2020) (citing, *inter alia, Lisi*, 2020 WL 881994, at *4) (finding that "rehabilitation of the defendant" did not constitute "an extraordinary and compelling reason for compassionate release"). This Court also made findings at sentencing regarding specific and general deterrence that remain sound and unrebutted by the defendant's motion. (Ex. C at 25 ("[I]t is necessary and appropriate to protect the public from further crimes of this man and also to deter others from engaging in this conduct.").)

Finally, the defendant argues that "[t]he offenses for which Defendant is incarcerated are non-violent and do not suggest that he is a danger to the community. The record does not suggest that Defendant was violent at any point. Not only are these crimes non-violent, they occurred years ago." (Pet. Br. at 43.) The non-violent nature of the crime does not shift the balance of the Section 3553(a) factors. These factors were considered at sentencing and informed the Court's decision to sentence the defendant to a below-Guidelines sentence of 144 months' imprisonment. *See Decker*, 2020 WL 3268706, at *3.

For the foregoing reasons, the Section 3553(a) factors considered by the Court at sentencing remain just as strong and applicable today as they did at sentencing and upon deciding Cuero's Prior Motion. As such, a reduction of Cuero's sentence is not warranted.

### IV.     Conclusion

Releasing the defendant would fail to protect the public or achieve appropriate general deterrence for this type of conduct, and such a time-served sentence would not reflect the seriousness of the defendant's crimes or promote respect for the law.  For all of the foregoing reasons, because the defendant has not met his burden of establishing "extraordinary and compelling" reasons under Section 3582, and the Section 3553(a) factors outweigh the medical concerns presented by the defendant, the Court should deny the motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: *Amanda Weingarten*

_____
Amanda Weingarten
Assistant United States Attorney
Southern District of New York
(212) 637-2257
Amanda.Weingarten@usdoj.gov

cc (by mail):   Gabriel Aguirre Cuero