H1k6cues

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

              v.                          15 CR 125-01(PKC)

GABRIEL AGUIRRE CUERO,

                   Defendant.

------------------------------x

                                          New York, N.Y.
                                          January 20, 2017
                                          12:30 p.m.


Before:

                    HON. KEVIN P. CASTEL,

                                          District Judge


                         APPEARANCES
PREET BHARARA
     United States Attorney for the
     Southern District of New York
EMIL J. BOVE
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
AMY GALLICCHIO


Also present:  Ana Toro-Greiner, Spanish language interpreter

H1k6cues

1    (In open court; case called)

2    THE COURT:  Now, Ms. Gallicchio, the first order of

3    business is I am going to go through the materials I have, and

4    the question will be whether I have what I should have.  I have

5    a presentence report, recommendation, and addendum transmitted

6    by Probation on January 4th.  That is also the date that the

7    report was revised.  I have a letter from the government dated

8    January 17th, 2017.  I have a memorandum from you, which is

9    dated January 6th and hopefully annexes a number of exhibits

10   both regarding health and family letters and letters of support

11   for the defendant.

12   Do I have everything I should have on the subject of

13   sentence?

14   MS. GALLICCHIO:  Yes, your Honor, you do.

15   THE COURT:  Has the defendant read, reviewed and

16   discussed with you the presentence report, recommendation and

17   addendum?

18   MS. GALLICCHIO:  Yes, your Honor, he has.

19   THE COURT:  Does the defendant have any objections to

20   the facts set forth in the presentence report?

21   MS. GALLICCHIO:  No, your Honor.

22   THE COURT:  Does the defendant have any objections to

23   the guidelines calculation set forth in the presentence report?

24   MS. GALLICCHIO:  Well, your Honor, as I think Mr. Bove

25   had pointed out in his letter to the Court, the guidelines that

H1k6cues

1   the Probation had calculated is a different guideline range

2   than that which was agreed upon in our plea agreement.  So with

3   respect to that, we would be asking the Court to abide by the

4   guideline range as agreed upon in the plea agreement.

5        THE COURT:  Well, I understand there are two different

6   arguments that you are free to make.  I just need to understand

7   which one it is.  One argument is that the guidelines range in

8   the presentence report was erroneously calculated should not be

9   adopted as the guideline range in this case.  The other is a

10  different argument that while Probation may have correctly

11  calculated the guideline range, you asked the Court to take

12  note of the fact that the presentence report -- not the

13  presentence report, the plea agreement contemplated a different

14  range and that you asked the Court to vary from the guidelines

15  to honor the range in the plea agreement.

16        Please tell me what you're arguing.

17        MS. GALLICCHIO:  It is the latter.

18        THE COURT:  So you do not urge that the guidelines are

19  erroneously calculated in the presentence report?

20        MS. GALLICCHIO:  That's correct, your Honor.

21        THE COURT:  Just to help me out, I see the stipulated

22  guidelines had the defendant in criminal history category two,

23  but I don't know what everybody had in mind -- why they thought

24  it was criminal history category two and why Probation thought

25  it was criminal history category three.

H1k6cues

1          Mr. Bove, can and enlighten me on that?

2          MR. BOVE:  Yes, your Honor.  From the perspective of

3   the government in making the plea offer and the plea proposal,

4   the difference resulted from a factually erroneous

5   understanding on the part of the government about whether the

6   defendant was subject to a term of supervised release based on

7   that conviction in Florida at the time of the offense conduct

8   in this case.  It was the government's impression at the time

9   of the plea offer that he was not.  As the Probation Office has

10  pointed out, the government was incorrect in that regard.

11         THE COURT:  Does defense counsel agree with that?

12         MS. GALLICCHIO:  Yes, your Honor, I do.

13         THE COURT:  Does the government have any objection to

14  the facts set forth in the presentence report?

15         MR. BOVE:  No, your Honor.

16         THE COURT:  Does the government have any objections to

17  the guideline calculation in the presentence report?

18         MR. BOVE:  No, your Honor.

19         THE COURT:  I adopt as my findings of fact the facts

20  set forth in the presentence report.  Further, I find that the

21  guidelines were correctly calculated, the defendant is in total

22  offense level 33, criminal history category three.

23         I will now give defense counsel an opportunity to

24  speak on behalf of the defendant.

25         MS. GALLICCHIO:  Thank you, your Honor.

H1k6cues

1          Your Honor, I am asking you to impose the mandatory

2     minimum sentence.  As I laid out obviously in my sentencing

3     submission, I am asking you to impose the mandatory minimum of

4     five years followed by supervised release.  As I laid out in my

5     submission and I will address today, I do believe that it is

6     sufficient and a substantial amount of incarceration in light

7     of all the circumstances.

8          I want to begin with, however, making a couple of

9     things clear that the government seems to question in its

10     letter in response to our submission.  The first is that the

11     government suggests that Mr. Cuero fails to fully accept

12     responsibility for his actions and the government seems to

13     reach that conclusion based on a phrase that is used in my

14     sentencing submission, that Mr. Cuero, desperate at the time

15     that he committed this offense, was powerless to refuse.

16          THE COURT:  I didn't pick it up in the government's

17     letter first.  I picked it up when I read your review.  I have

18     that sentence highlighted.  I had a similar reaction.

19          MS. GALLICCHIO:  Yes.  So I think that perhaps your

20     Honor and the government misunderstood the sentiment of that

21     phrase.  I wasn't in any way suggesting that he did not

22     exercise under free will nor did he not have the intent to

23     commit this offense.  It was more of a general sense of the

24     desperation of his situation and it was a term of art.  So I

25     hope the Court would understand and certainly the government

H1k6cues

that certainly he accepts full responsibility.  The very next
line in my sentencing submission after I do use that phrase I
write, "He knows how wrong his choice was and how grave a
situation is and that he expects to be punished."  So I want to
make that very clear that this gentleman has always accepted
responsibility from the first day that I met him.  In case
there is any question to that, I hope that satisfies the Court.

        The government also suggests that Mr. Cuero questions
my suggestion that he committed this crime under economic
duress and they suggest that that is strained at best in light
of his prior arrest and his admission in 2007 to have been
involved in prior refueling operations.  They also suggest
following his release in 2012 from the United States custody,
he should have or could have relocated to some other city in
Colombia or some other country in South America or Central
American, and in that way somehow avoid being in an economic
situation, which would compel him to commit such an offense.  I
would suggest to the Court that that demonstrates a lack of
understanding of the economic conditions in Colombia,
particularly in Buenaventura where Mr. Cuero is from.

        THE COURT:  How did economic conditions impact his
decision to engage in the prior acts of drug trafficking for
which he was sentenced?  Were they a factor there?

        MS. GALLICCHIO:  They were a factor there as well,
yes.

H1k6cues

1          THE COURT:  Would it be true for the vast majority,

2     not all but the vast majority, of those engaged in drug

3     trafficking one the motivating factors is that it is a more

4     attractive means of earning money than other options available

5     to them?

6          MS. GALLICCHIO:  I would say that perhaps that is the

7     case for many people.  This is not the life that Mr. Cuero has

8     led.  He is not a person who hasn't worked hard his entire

9     life.  He is man who at the age of 10 years old was fishing at

10    night and going to school in the morning.  He is a man when his

11    costal down was devastated by a tsunami and his family

12    relocated to the mountains where he spent years doing hard

13    labor, cutting wood and transporting lumber down the mountain.

14    He is a man in reaching his 20s relocated to the city of

15    Buenaventura and involves himself in the fishing industry, a

16    commercial and local fishing industry.

17         So this is not a man who has led a life in which he

18    has chosen a more attractive path.  He has worked hard.  He is

19    a humble man.  His involvement in both the matter in 2007 and

20    now came at a time when he was suffering.  His family was

21    suffering economically and at the time found it difficult to

22    have another way out to support his family.

23         So to suggest that he could have relocated and he

24    could have moved to another place really shows a lack of

25    understanding of his economic situation.  He returned to

H1k6cues

Colombia no better than he left.  He did not have the economic

means by which to relocate his entire family.  I think that

that demonstrates his actual economic situation and how dire it

was, the fact that this man could not move from a deplorable

situation.

      I suggest to the Court also, and I refer to it in my

sentencing submission, your Honor, to various links and

articles, particularly the Human Rights Watch link, which does

discuss in great detail the conditions in particularly

Buenaventura, Colombia, where Mr. Cuero is from.  As I noted in

my submission, the 2003 census noted that 80 percent of the

population lived in poverty.  In 2011 the unemployment rate was

40 percent, which is twice the amount than it was in any other

part of the country.  Hundreds of people have been killed

there, not only killed but dismembered.  It is a city that is

ravaged by paramilitary groups, drug organizations, and many

more people have disappeared.  Those who can relocate, have

relocated.  Mr. Aguirre Cuero and his family cannot.

      As I said in my submission, men like Mr. Aguirre

Cuero, who are poor fishermen, they are compelled by poverty

and are at the lowest level of the totem pole of any drug

organization I would suggest.  I would suggest also that they

are exploited and placed in the greatest danger, not just of

getting arrested but certainly of losing their lives because

they are powerless.  Certainly there is no suggestion of this

H1k6cues

1    of Mr. Cuero that they manufactured cocaine, they package

2    cocaine, they load up these large vessels.  He is not living in

3    a palace in the lap of luxury driving expensive cars and

4    wearing expensive clothes and fine jewelry.  That is just not

5    who he is and where he stands in the scheme of a

6    drug-trafficking organization.  I take issue somewhat with

7    categorizing him as a member of a drug-trafficking

8    organization.  Certainly he involved himself with a

9    drug-trafficking organization, but his level of involvement is

10   as I said the lowest level there can be.

11        I know that the government made some suggestion that

12   because some leader in the drug-trafficking organization hired

13   a lawyer to represent Mr. Cuero and the two other defendants --

14   two other crew members and now defendants who have been

15   arrested in this case suggests perhaps that he had some more of

16   a role or involvement or membership in this drug-trafficking

17   organization, but I find it hard to accept the logic of that

18   argument.  I think is more likely certainly that attorneys are

19   hired to keep these people quiet.  Certainly he didn't have the

20   best lawyers.  Nothing happened.  He didn't receive great

21   representation.  He wasn't released from prison.  He is here in

22   the United States.  So I don't believe there is any other

23   suggestion, any other evidence this gentleman was a target of

24   surveillance or any other involvement in this drug-trafficking

25   organization than his involvement in this particular case.

H1k6cues

1    So I ask your Honor to imagine how hard life must be

2    to be willing to board a boat, a go-fast boat with three other

3    crew members -- two other crew members with very little

4    supplies and to set out on the high seas knowing the risks and

5    knowing the dangers, particularly when he has done it before,

6    that things have to be pretty bad.  In fact, they were for Mr.

7    Cuero.  When you have to borrow money from your neighbors, when

8    you have to borrow water from your neighbors to drink and to

9    wash with, when your children are hungry, when you cannot send

10   them to school, when you have no electricity, things are

11   desperate and people do desperate things and that is where he

12   found himself in 2015.

13   This is not to say that he should not be punished, and

14   I am not by my means suggesting that, and he accepts that he

15   should be punished.  The guidelines sentence, the one that was

16   negotiated in the plea agreement or the one that the Department

17   of Probation has correctly calculated is excessive under all

18   the circumstances.  We're talking about at the low end of the

19   guideline range a 168 months.  That is 14 years.  These are not

20   just numbers.  That is a long time.  Of course I understand the

21   concerns that the Court must have that Mr. Cuero has a prior

22   conviction for a similar offense, rightfully so, and the fact

23   that as the government pointed out in its submission that he

24   initially received a sentence of 135 months, which was later

25   reduced on a Rule 35 motion to 70 months; but I would suggest

H1k6cues

1    to the Court that that sentence that he received in the Middle

2    District of Florida should not be the guidepost here.

3              In my discussions with other attorneys in the Southern

4    District and research into prior sentences in the Southern

5    District reveals that first offenders like Mr. Aguirre Cuero

6    was when he was sentenced in Florida do not receive sentences

7    event close to what he received in Florida.  All of the cases

8    that I looked at had sentencing guidelines in the range of 168

9    to 210, for example.

10             THE COURT:  What was the quantity of drugs that were

11   at issue in the case in the Southern District of Florida?  What

12   was the quantity?

13             MS. GALLICCHIO:  I believe it was 2,500 kilos.

14             THE COURT:  Now, when you looked at cases involving

15   first offenders, how many of those cases had a quantity north

16   of, let's say, a thousand kilos of cocaine?

17             MS. GALLICCHIO:  Your Honor, there were none north of

18   a thousand.

19             THE COURT:  All right.

20             MS. GALLICCHIO:  There were several 680 kilos,

21   630 kilos.  I agree, however --

22             THE COURT:  No.  No.  Listen.

23             MS. GALLICCHIO:  I understand your point, your Honor.

24             THE COURT:  And I understand yours as well.

25             Go ahead.

H1k6cues

1      MS. GALLICCHIO:  So I am not saying that he shouldn't

2   receive what others have received here.  What I am suggesting

3   is that it is not the type of sentences first offenders

4   regardless of the quantity on a go fast boat are receiving in

5   the Southern District.  I would ask your Honor to take that

6   into consideration therefore would ask you not to be compelled

7   to use that as a guidepost and to impose a sentence greater

8   than that for which was last imposed, which I understand is a

9   consideration for the Court.

10      THE COURT:  Your argument was if he were sentenced in

11   this district for 2,000 kilograms of cocaine, if he was

12   criminally responsible as part of the conspiracy, you would

13   expect that a judge in this district would not have given him

14   135 months; is that what you are arguing?

15      MS. GALLICCHIO:  I am saying there is certainly based

16   on what I have seen and what I have learned from others that I

17   have spoken to, other attorneys, that that is not the general

18   practice, that a guideline sentence is imposed under those

19   circumstances for a first offender.

20      THE COURT:  If I tap somebody on the shoulder or went

21   to the judge's lunch room and I said, Let me ask you a

22   question.  The conspiracy to distribute cocaine, have you ever

23   heard of a first offender getting 135 months?  Probably

24   everyone around lunch table would say, No, I can't really think

25   of any offhand.  Then I could walk out of the lunch room and

H1k6cues

finish and go back to work.  But if I turned around and I
recast that as, Are you surprised that somebody who is
responsible for participation in a distribution of over
2,000 kilos of cocaine got a sentence of about 11 years, I
think people would say, Not in the slightest.  It depends on
how you cast the question.

          MS. GALLICCHIO:  I understand that, your Honor.  We're
not talking about someone who was in charge of an organization.
We're not talking about someone who --

          THE COURT:  No leadership enhancement.

          MS. GALLICCHIO:  Right.  We're talking about the
circumstances of that case.  That boat could have contained
300 kilos, 5,000 kilos.  I think that the fact of that type of
case -- I am talking about a specific type of case -- where
most of these cases involve people who are of very little
means, who are living in poverty, who are manning and asking to
man these boats to make 5,000, $10,000, which is a fortune to
many of those people.

          So I understand the quantity sounds like a lot and it
is.  Those numbers are huge.  I think based on the nature and
circumstances and the type of case and the type of people that
courts see in front of them, under these circumstances I
wouldn't certainly hope that a court would take that into
consideration and not impose the grave penalty they could
possibly impose on someone under those circumstances.

H1k6cues

1          THE COURT:  In the case in the Southern District of

2     Florida was that a single boat trip?

3          MS. GALLICCHIO:  Yes.  That's my understanding based

4     on the materials I have received.

5          THE COURT:  I understood that he cooperated and when

6     he cooperated, I thought I read that it was a number -- well,

7     here.  He subsequently admitted to having participated in 15 to

8     20 maritime drug-trafficking operations before 2007.

9          MS. GALLICCHIO:  Right.  My understanding is based on

10    the documents that I have received and I've obtained that he

11    pled guilty to one count of an indictment, which did not

12    address other offenses.

13         THE COURT:  For the record according to the

14    government -- this is in the presentence report as well -- the

15    amount of cocaine seized for the record was 2.8 tons.

16         MS. GALLICCHIO:  2,500 kilos.

17         THE COURT:  Right.

18         MS. GALLICCHIO:  It sounds more in tons, but it is the

19    same quantity.

20         THE COURT:  I realize that.

21         MS. GALLICCHIO:  So I know this is an uphill battle.

22    I understand.  All I am asking is that you put this in

23    perspective and consider the nature of the type of offense that

24    we're talking about and obviously the nature of the man who is

25    in front of you.  A sentence of five years in my opinion is a

H1k6cues

1  substantial sentence.  I am not asking for leniency.  I am not

2  asking for leniency in my submission.  I wouldn't really

3  consider that lenient.  It is our position that it is

4  sufficient given the factors of 3553(a).

5        I would also ask your Honor to consider significant

6  and relevant the conditions of confinement that Mr. Cuero has

7  already received.  The government suggests somehow that Mr.

8  Cuero should have known these conditions of confinement in

9  Colombia and would make them less relevant.  I would reject

10 that argument and, also point out that Mr. Cuero has never been

11 in a Colombian prison prior to his arrest in this case.  When

12 he was arrested previously, he was arrested on the Pacific

13 Ocean and he was transported to the United States, not via a

14 Colombian prison.

15       This man was in one the worst prisons in Colombia.

16 There are plenty of resources available to support that

17 position.  I provided some links to the Court and some

18 documentation to the Court.  The conditions are inhumane by

19 anyone's standards.  There was lack of sunlight, heat,

20 electricity, running and clean water, infections, diseases,

21 respiratory and stomach disorders.  There was very little to no

22 medical treatment.

23       As I pointed out, the inmates, extraditables there,

24 were required to carry large trays of food to their units on a

25 rotating basis.  On one occasion when Mr. Cuero was required to

do that, he slipped and he fell down a flight of stairs landing

directly on his right wrist.  He fractured his wrist and he

received no medical treatment.  He was taken to the clinic.

There was no doctor.  He was forced to have treatment by a

fellow inmate who happened to be a medical doctor who set his

wrist.  He put a splint on it.  To this day he has received no

medical treatment.  The Court can see the deformity in his

wrist if Mr. Cuero could show his bone.  He has a fracture and

a permanent deformity and constant pain.  He still can use his

hand, but it is a lot of difficulty doing menial tasks.

         So as hard as prison life is in the United States,

those conditions would never be tolerated here and no one does

time like that in the United States.  His time here will also

be hard obviously.  He will be thousands of miles away from his

family.  As you can see there is no one in the courtroom for

him.  He will not have a visitor no matter how long he stays in

jail.  His family has no economic means nor probably any

ability and none will be permitted to visit the United States.

So his prison conditions will be harsh and have been harsh.  I

ask your Honor to consider that when imposing your sentence.

         This gentleman is a good man.  He is a humble man by

everyone's report.  He is a God-fearing man.  He has worked all

of his life, from fishing villages when he was a child,

sacrificing his education after only three years so that he

could work to support his family in the logging business.  From

H1k6cues

fishing to logging in the mountains and then back to the city
to his fishing roots.  He asks for your consideration of his
life circumstances, your consideration of his offense conduct,
and your trust that he knows, he is well aware, that this is
the end of the road for him.

He has a family that loves him as your Honor saw in
the letters of support and promises to him get legitimate
employment when he returns.  His children are in school.  His
daughter is I believe graduating.  They are trying to find
their own way, getting employment, and they will help him and
support him.

Based on all that and everything we have written to
the Court, we ask that you impose a sentence of five years.

THE COURT:  Thank you very much.

Mr. Cuero, this is your opportunity to speak, to
address the Court directly, to bring to my attention any facts
or circumstances that you believe I should take account of in
passing sentence upon you today.  If there is anything you wish
to say, this is the time to say it.

THE DEFENDANT:  First of all, your Honor, God bless
you.

I want to apologize for what I did.  Truly I did it
out of need.  I didn't have a way to survive and when I saw my
family suffering -- I didn't have electricity in my home
because it had been cut off, I had no water, I owed money, I

H1k6cues

had no means to pay back.  Every day someone would come home

trying to get paid for it and I could see I was unable to find

work.  Then the need forced me to do that or drove me to do

that.  I promise you I will never ever again do something like

that because -- because actually that would hurt me and it will

hurt my family as well and I don't want to spend the rest of my

life in prison.  I want you to have mercy and I will never do

this again.  God bless you.

         THE COURT:  Thank you, Mr. Cuero.

         This is the government's opportunity to speak.

         MR. BOVE:  Thank you, your Honor.

         There are three points I want to make and I will try

to make them briefly.  The first is that I want to be

unambiguous we're abiding by the plea agreement and consenting

to this variance argument that related to the guideline range

in the plea agreement of 151 to 188 months.

         The second point I want to make --

         THE COURT:  What would be the basis for the variance?

         MR. BOVE:  I think that a number of arguments --

         THE COURT:  The fact that the plea agreement has the

155 months, is that a basis to vary?

         MR. BOVE:  Not in and of itself, but I think there are

other arguments that have been presented that could support a

variance today.

         The second point that I would want to make is that

H1k6cues

1    just because this defendant was involved in the transportation

2    component of a drug-trafficking operation does not mean that he

3    is the lowest level member of this organization, the

4    organization that he did in fact work for.  This is not a

5    courier.  This is someone who was entrusted in this case with

6    350 kilos and as your Honor pointed out earlier previously

7    trusted with over 2 tons of cocaine.  The economic value of

8    those drugs demonstrates that the people who provided them to

9    him trusted him enough to get him to the place where they

10   wanted it brought.  This is not somebody akin to a courier

11   transporting a kilo within the city from Point A to Point B.

12   This is a trusted member of an organization and that is borne

13   out by the fact that he tried to hire counsel for him in

14   Colombia.  It was not to make legal arguments.  It was to pay

15   bribes to get him out of jail.

16          The last point I want to make relates to the argument

17   presented about the economic conditions where the defendant is

18   from.  I struggle with that, to really process that in the

19   context of a proceeding like this for a defendant who has been

20   convicted previously, who as I hear him saying that he was

21   powerless to refuse in light of the economic conditions where

22   he is from the opportunity to earn money by engaging in drug

23   trafficking.  In the absence of an articulated plan for what is

24   going to be different when this man returns, I think you are

25   left in a position with the state of this record that supports

H1k6cues

 1   a strong finding about the importance of deterrence, specific

 2   deterrence, because a sentence of 70 months was not enough the

 3   last time this happened to convince the defendant that this

 4   drug trafficking and supporting maritime drug-trafficking

 5   operations cannot be a way of life, cannot be a means of

 6   income.  It wasn't enough last time.

 7        Nothing has been said to address the question of what

 8   would be different upon release after completion of his

 9   sentence in this case.  Both with respect to specific

10   deterrence for this defendant as well as general deterrence so

11   that when the defendant returns to Colombia and explains his

12   experience, people can start to think, I submit, more

13   rationally based on the penalties imposed about whether this is

14   viably a way of life down in Colombia, trafficking in drugs

15   that ultimately end up here in the United States as poison.  I

16   think that indisputably there are some things that are

17   mitigating here that have been described that at the end of the

18   day that deterrence -- the need for the deterrence in this

19   sentencing is very powerful in light of the lack of an

20   articulated plan for why it would be any different for this man

21   to make a living when he returns, and that is what leads me at

22   the end of the day advocating to your Honor for a guideline

23   sentence.

24        THE COURT:  Thank you, Mr. Bove.

25        This is the Court's statement of reasons for the

H1k6cues

1     sentence to be imposed on Gabriel Aguirre Cuero:

2            In sentencing the defendant, I have considered all the

3     materials that I referenced at the outset of this proceeding

4     and I have considered the very thoughtful presentation by Ms.

5     Gallicchio today.  I think it was very fine advocacy and

6     difficult advocacy and I compliment her on the fine job she

7     did.  I also took the defendant's statement as very sincere.  I

8     have considered each of the factors under Section 3553(a).  I

9     need not recount all that I have considered, but I have

10    considered it all.  I will comment on some of them.

11           The defendant during the period January and February

12    of 2015 participated as a member or associate of a

13    drug-trafficking organization that transported multi-kilogram

14    quantities of cocaine from Colombia to the United States on the

15    seas.  Defendant, with two others, participated in a shipment

16    of 350 kilograms of cocaine operating a flagless vessel

17    carrying the cocaine furnished by the drug-trafficking

18    organization.  The Colombian Navy located and intercepted the

19    vessel in international waters and it was flying no flag of any

20    country.  They found the cocaine, and the United States assumed

21    jurisdiction over the vessel and the crew.

22           In the plea agreement the defendant acknowledges being

23    responsible for between 150 and 450 kilograms of cocaine.  He

24    was previously convicted in the Southern District of Florida of

25    conspiracy to possess with intent to distribute 5 kilograms or

H1k6cues

more of cocaine while aboard a vessel subject to the

jurisdiction of the United States.  It wasn't in fact merely

5 kilograms but 2,800 kilograms for which the defendant was

responsible, and he admitted that he had participated in

between 15 and 20 refueling operations of cocaine smuggling

vessels in the past.

        The defendant is 53 years of age and comes from a very

poor area of Colombia.  He has various medical conditions.  He

is taking medication for high cholesterol, like a lot of

people, and he has an unspecified eye condition in addition to

the fracture and dislocation of his wrist.  His sentence of 135

months in the Southern District of Florida was reduced because

of substantial assistance.  He was on five years' supervised

release.  He was released in 2012.  Again, this offense took

place in early 2015.

        I see nothing unusual about the sentence originally

imposed in the Southern District of Florida.  I keep calling it

the Southern District of Florida.  It wasn't it was the Middle

District.  It was in Tampa.  I stand corrected.  My repeated

references to Southern District to Florida should have been

Middle District of Florida.

        This man was indifferent to the poison that was being

distributed and ruining people's lives.  It is absolutely true

that this defendant has a proven record of being industrious.

I believe he is industrious, he is smart, he is reliable, and

H1k6cues

1   he is trustworthy.  That is why he would be trusted with the

2   quantities of cocaine that he was.  These are the attributes

3   that would make him an attractive person to be engaged either

4   as an independent contractor or otherwise by a drug-trafficking

5   organization.  A rational drug trafficker is not going to

6   utilize someone who is lazy, stupid, unreliable, and not to be

7   trusted.

8       I think the arguments of economic necessity do prove

9   too much.  I understand now if caught again he would face a

10   much longer period in prison.  Well, people who engage in drug

11   trafficking on the seas generally don't get caught.  The odds

12   of escaping interdiction are high.  The plan in engaging would

13   not be, Let me engage in this, get caught and spend the rest of

14   my life in prison.  The plan would be, Let me engage in this

15   and this time I am going to use a new methodology and new

16   technology, a new route and avoid detection.  He may be right

17   about that.  He may.

18       I have also heard that the family now would have the

19   ability to help him.

20       Mr. Cuero got a break when a sentence was reduced down

21   to 70 months.  I am not saying it was inappropriate.  It

22   probably was appropriate.  But he fully understood what the

23   consequences of the actions are.  Despite sincerity of the

24   statements here today, I believe that there is a serious danger

25   that if this man returned to his former home in 60 months, less

H1k6cues

any credit for time served, that he would again assist the
drug-trafficking organization in one capacity or another and
the message would be:  The first time you get 70 months.  The
second time you get 60 months.  Maybe if I am caught again, I
will get 50 months.  It may not be that Mr. Cuero would believe
that but others hearing his tale would.

     I take no joy or pleasure from the sad circumstances
Mr. Cuero is in.  I think it is sad to the government.  It's
sad to defense counsel.  It is sad to Mr. Cuero and it is sad
to me.  I can't imagine what it is like having to do jail time
in another country where you are cut off from your family.  I
think that is an awful situation.

     Mr. Cuero did not go around shooting people, stabbing
people, drawing blood; but he participated in an important way
in the distribution of a substance, which creates misery in the
lives of the people who use it.

     There is an important value in general deterrence in a
case such as this.  There is also, as I have said, a need for
specific deterrence of this individual.  These are legitimate
concerns under 3553(a).  It is also appropriate to impose just
punishment and promote respect for law.  We have not discussed
this, but Mr. Cuero could care less about the laws of the
United States.  Now, maybe I could understand that on his first
go-around.  I don't have the transcript of his sentencing, but
it is a legitimate matter to wonder whether he said at his

H1k6cues

original sentencing that he was sorry and he would never do it
again.  I have heard no claim that he said to the judge, I have
an open mind about whether I would do this again.  I tend to
doubt that.

As to the financial compensation, by his account it
was $10,000.  I realize he was living in poor surroundings, but
I suspect even in a wealthy country like the United States you
get a fair number of takers who would undertake a dangerous and
unlawful mission of shipping drugs for $10,000, and $10,000
doesn't go as far here.

So I don't know what the right thing to do in Mr.
Cuero's case, but I do know that it is necessary and
appropriate to protect the public from further crimes of this
man and also to deter others from engaging in this conduct.

I note that the sentencing range and the stipulated
guideline range was 151 to 88 months and in the correct
guideline range it is 168 to 210 months.  There is a
substantial overlap between the two guideline ranges.

Was the defendant charged or did he plead guilty to
the full quantity or was he allowed to plead or indicted for an
offense which reflected a lesser quantity?

MR. BOVE:  In this case, your Honor?

THE COURT:  Yes.

MR. BOVE:  The quantity in the guidelines stipulation
reflects the full quantity.  He was permitted to plead guilty

H1k6cues

1    to an offense with a lesser statutory threshold relating to

2    mandatory minimum.

3              THE COURT:  He was charged with the offense that

4    triggered a higher statutory mandatory minimum?

5              MR. BOVE:  Yes, your Honor.

6              THE COURT:  What was that mandatory minimum?

7              MR. BOVE:  10 years.

8              THE COURT:  He was allowed to plead to a lesser

9    offense?

10             MR. BOVE:  Yes, your Honor.

11             THE COURT:  That was the decision of the government?

12             MR. BOVE:  Yes, your Honor.

13             THE COURT:  Taking into account the period of time

14   that the defendant spent prior to arriving in the U.S. custody,

15   as I do, and the conditions under which he was held prior to

16   arriving in U.S. custody, as well as other arguments advanced

17   by the defendant, I conclude that a sentence of 144 months'

18   imprisonment, lifetime supervised release, waiver of the fine,

19   and imposition of the $100 special assessment together with

20   forfeiture is sufficient but not greater than necessary to

21   achieve the purposes of Section 3553(a).

22             Does the defendant or his counsel have any objection

23   to the Court's proposed sentence or the statement of reasons

24   for that sentence?

25             MS. GALLICCHIO:  No, your Honor.

H1k6cues

1              THE COURT:  Does the government have any objection?

2              MR. BOVE:  No, your Honor.

3              THE COURT:  Defendant will please stand and the Court

4    will impose sentence.

5              Gabriel Aguirre Cuero, you are hereby sentenced to the

6    custody of the United States Bureau of Prisons to be imprisoned

7    for 144 months.  Following release from imprisonment, you shall

8    be placed on supervised release for the rest of your natural

9    life with the following terms and conditions:  You shall not

10   commit another federal, state or local crime nor illegally

11   possess a controlled substance nor possess a firearm or

12   destructive device.  You shall refrain from any unlawful use of

13   a controlled substance and submit to one drug test within 15

14   days of placement of supervised release and at least two

15   unscheduled drug tests thereafter.  You shall cooperate in the

16   collection of DNA as directed by probation.

17             The standard conditions of supervision 1 through 13

18   are imposed with the following special conditions.  You shall

19   submit your person, residence, place of business, vehicle, or

20   any other premises or electronic devices under your control to

21   a search on the basis that the Probation officer has reasonable

22   belief of that contraband or evidence of the condition of a

23   violation of conditions of release may be found.  The search

24   must be conducted at a reasonable time and in a reasonable

25   manner.  Failure to submit may be grounds for revocation.  You

H1k6cues

1    shall inform any other residence that the premises may be

2    subject to search pursuant to this condition.

3            You shall obey the immigration laws of the United

4    States and comply with the directives of immigration

5    authorities.

6            If you are ever at liberty in this country, which I

7    doubt very much, you shall report to a Probation Office within

8    72 hours.

9            It is further ordered that you shall pay to the United

10   States a special assessment of $100, which be shall be due

11   immediately.  Based on limited assets, limited earning ability,

12   the fine is waived.

13           You shall forfeit to the United States any and all

14   property used or intended to be used in connection with the

15   offense to which you entered a plea of guilty.

16           Mr. Cuero, you have the right to appeal the sentence I

17   have imposed on you.  If you cannot afford the cost of an

18   appeal, you may apply for leave to appeal as a poor person.

19   The time limits for filing a notice of appeal are brief and

20   they are strictly enforced.  If you request the Clerk of Court

21   will prepare and file a notice of appeal on your behalf.

22           Do you understand that, sir?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Please be seated.

25           Is there anything further from the government?

H1k6cues

1          MR. BOVE:  Your Honor, I move to dismiss the

2     underlying counts.

3          THE COURT:  Any open counts are dismissed without

4     objection.

5          Does the defense have anything further?

6          MS. GALLICCHIO:  No, your Honor.

7          THE COURT:  Mr. Cuero, I wish you a long and healthy

8     life.  I hope you do become reunited with your family.  Until

9     that happens, I hope that you maintain good communication with

10    them by letter or otherwise.  As I said before, it is a sad day

11    for everyone.  No one can be happy about the circumstance that

12    you find yourself in.  As a fellow human being, you have my

13    sympathy in that regard; but I said what I said and I meant it

14    all.

15         I wish you the best.

16         We're adjourned

17                              -0-

18

19

20

21

22

23

24

25